UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM R. SCHMID, | ) | Case No. 1:08 CV 1273 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

William R. Schmid filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) from the administrative denial of disability insurance benefits. At issue is the ALJ's decision dated September 7, 2007, which stands as the final decision of the Commissioner. See 20 C.F.R. §404.1481. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Schmid was 57 years of age at the time of the administrative decision and had 15 years past work experience as a maintenance supervisor at LTV Steel, which constituted skilled work (Tr. 231, 551, 574). After he was laid off in June 2001, he unsuccessfully attempted self-employment performing home repairs and later heating-ventilation and air-conditioning repairs until September 2006 (Tr. 229). Schmid alleges onset of disability on July 1, 2001 and argued that his efforts at self-employment following lay-off did not constitute substantial activity that would disqualify him from receiving disability insurance benefits. (Tr. 15, 40-202). The ALJ agreed (apparently reluctantly)

1:08 CV 1273                                    2

that Schmid had not engaged in substantial gainful activity following June 2001, but that "it was questionable whether the claimant in fact reported all of his income." (Tr. 16).

Schmid claims that he is disabled by the combination of Hepatitis C, vasculitis, and neuropathy of the lower extremities. After administrative hearing and *de novo* review, an ALJ concluded that Hepatitis C and vasculitis were severe, but not disabling impairments, which limited Schmid to light work. Based on this determination Schmid could return to his past relevant work as maintenance supervisor.(Tr. 16-19). Schmid contends that the opinions from his treating physicians, Drs. Mullen and Sage establish that the was disabled.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful

1:08 CV 1273                                3

activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

1:08 CV 1273                                          4

*Evaluation of opinion from the treating physician:*

Kevin D. Mullen, M.D. has treated Mr. Schmid for over ten years for problems associated with Hepatitis C including severe fatigue, vasculitis in the patient's lower limbs and severe neuropathy (Tr. 236-237, 524-527). On July 12, 2005, Dr. Mullen opined that Mr. Schmid's ability to stand, sit, walk, lift, carry and handle objects is compromised by his fatigue as are his social interactions and concentration levels (Tr. 237). In May 2007, Dr. Mullen indicated that Mr. Schmid continues to suffer from Hepatitis C with associated severe vasculitis with symptoms including chronic fatigue, muscle and joint aches, difficulty concentrating, weakness and neuropathy (Tr. 524-527). He noted that Mr. Schmid will not recover from the neuropathy in his legs and that he is on continuous Interferon therapy to control his limb vasculitis (Tr.524). Dr. Mullen opined that Mr. Schmid would "constantly" experience fatigue, pain or other symptoms severe enough to interfere with his attention and concentration to perform even simple work tasks, could walk approximately one city block before resting or experiencing severe pain, could sit for 20 minutes at one time, could stand for 5 minutes at one time, would not be capable of working an 8-hour workday-40 hours per week, would need to be able to shift positions at will from sitting, standing or walking, would need breaks during the day due to pain and fatigue, could not lift and carry and could not twist, stoop, crouch/squat, climb ladders and climb stairs (Tr. 526).

Joseph L. Sage, M.D., who has also been involved in the treatment of Mr. Schmid's Hepatitis C., opined that Mr. Schmid could occasionally lift and/or carry 10 pounds, frequently lift and/or carry 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and was limited in pushing and/or pulling with his upper and lower extremities

1:08 CV 1273                                        5

due to chronic, debilitating joint pain associated with hepatitis C (TR. 519-520). Dr. Sage further reported that Mr. Schmid should never climb, kneel, crawl and stoop and only occasionally balance and crouch due to neuropathy and decreased sensation (Tr. 520).

The ALJ, however, relied on the residual functional capacity assessment from 2005 prepared by two non-examining state agency physicians based on Dr. Mullen's March 2005 physical examination (Tr. 18, 371). The records available for these physicians are contained in Ex. 1F. Dr. Mullen reported from the March 22, 2005 examination that Schmid suffered from chronic Hepatitis C, stage 2 fibrosis and that multiple courses of treatment had provided minimal response (Tr. 239).The doctor's report In March 2005, though, was optimistic because the Interferon treatment was successful with an essentially normal physical examination (Tr. 239). Interferon therapy had kept lower limb vasculitis under control. *Id*.

However, on the June 28, 2005 visit, Dr. Mullen reported that the vasculitis and lesions reappeared on the lower limbs (Tr. 238). Apparently, Schmid had missed his weekly dosage of Interferon (Pegasys). *Id.* Nonetheless, there was no joint swelling, or leg edema. *Id*.

In determining the question of substantiality of the evidence, reports of physicians who have provided treatment over a long period of time are entitled to greater weight than the reports of physicians employed by the government for the purpose of defending against a claim for disability. See 20 C.F.R. §404.1527(d)(2); §416.927(d)(2).; 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). This is commonly known as the "treating physician rule." See *Rogers v. Commissioner of Soc. Sec.*, 486

1:08 CV 1273                                     6

F.3d 234, 242 (6th Cir. 2007); *Wilson* v. *Commissioner of Soc. Sec.*, 378 F.3d 541, 544(6th Cir. 2004). The ALJ must give the opinion from the treating source controlling weight if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2).

The ALJ found Dr. Mullen's and Sage's opinions were contradicted and discounted them because their findings were inconsistent with Schmid's own statements that the was doing very heavy lifting and carrying as well as being on his feet and climbing ladders. (Tr. 19). The ALJ further reasoned that Dr. Sage did not provide any medical or clinical findings to support his conclusions other than diagnoses and symptoms, and Dr. Mullen admitted that he was not a vocational therapist qualified to assess these functions. *Id.*

Schmid did tell Dr. Mullen on January 9, 2007 that he was "working quite a bit on ladders" (Tr. 15, 380). Before that he told Dr. Hinch on October 9, 2006, that he "[w]orks for heating and a/c, up an down ladders, kneeling over, etc." (Tr. 15, 390). Part of the ALJ's decision is supported by the record- that Schmid had climbed ladders and kneeled. The ALJ, though, jumps from this to implicitly find that Schmid could sustain this activity despite his testimony to the contrary, his

1:08 CV 1273                                             7

financial records, and the opinions from treating physicians.[1] The record does not support the ability to perform sustained light or medium sustained work activity.

Moreover, the ALJ's statement that Schmid admitted to performing heavy work is not supported in the record. On June 27, 2006, Schmid told Dr. Mullen that he was "working hard at this (*sic*) private jobs where has begun to generate a decent amount of revenue. It sounds like he has a very *heavy work schedule* trying to keep up with all the new contracts he is getting in(emphasis added)." (Tr. 15, 399). This was not an admission as the ALJ found to heavy lifting and carrying (Tr. 19).

Likewise, Dr. Mullen admitted that he was uncertain on the extent of the degree of compromise to Schmid's basic work activities due to fatigue "[n]ot being a vocational or physical medicine/rehab. physician." (Tr. 19, 237). Dr. Mullen explained, though, that it was a question of stamina. (Tr. 237). Dr. Mullen did leave open his opinion on the issue of stamina, but did not claim to be generally incompetent to assess residual functional capacity. The ALJ misconstrued the record in reaching her decision on two reasons to reject Dr. Mullen's opinion.

---

[1] As defined in *Cohen v. Secretary*, 964 F.2d 524, 530 (6th Cir. 1992):

Residual functional capacity is defined as the `maximum degree to which the individual retains the capacity for <u>sustained</u> performance of the physical-mental requirements of jobs.' 20 C.F.R. pt. 404, Subpt. P, App. 2 §200.00(c) (1989) (emphasis added). In determining a claimant's physical abilities, we must assess the severity of [claimant's] impairment(s) and determine [claimant's] residual functional capacity for work activity on a *regular and continuing basis*. 20 C.F.R. §404.1545(b) (1989) (emphasis added).

1:08 CV 1273                                                8

Dr. Sage only provided diagnoses as support for his opinion. (Tr. 519-20). However, the question required to be answered pursuant to regulation is whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." See 20 C.F.R.§404.1527(d)(2). The impairments which Dr. Sage found to be restricting as Hepatitis C and neuropathy are supported in this record (See Tr. 385). This is contrary to the ALJ's finding that "Dr. Sage fail[ed] to provide any medical or clinical findings to support his conclusions other than to state diagnoses and symptoms." (Tr. 19).

Moreover, it is not simply an issue of the ALJ providing reasons to reject a treating physician's opinion which have support in the record. What is at issue here is whether the ALJ applied the correct legal standard in assessing what is a "medical opinion." Reversal is required when in rejecting a treating physician's opinion the ALJ failed to give "good reasons" for not giving weight to that opinion. See *Wilson v. Commissioner of Soc. Sec.* 378 F.3d 541, 544 (6th Cir. 2004). This requirement for articulated "good reason" has been long recognized since at least SSR Rulings 96-2p and 96-5p, which require the ALJ to articulate specific legitimate reasons supported by substantial evidence in the record that are sufficiently specific to make clear for subsequent review the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. The ALJ *must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. "Specifically, § 404.1527(d) of the [Social Security Administration]'s regulations prescribes that the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment

1:08 CV 1273                                                   9

relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source." *Bowen*, 478 F.3d at 747. The ALJ's determination does not utilize these considerations fully. "An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process." *Wilson*, 378 F.3d at 545(quoting *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)). The ALJ did not employ the requisite 5considerations in reaching her conclusion.

*Credibility:*

There is no question that reversal is mandated. What is at issue is whether Dr. Mullen's' opinion is overwhelmingly supported by this record for remand for benefits over remand for reconsideration. Debilitating fatigue on which Dr. Mullen's and Sage's opinions are based in part "is not readily reduced to objective medical criteria, and the ALJ was not bound to accept as credible [Schmid's] own testimony regarding [his] symptoms." *Cohen v. Secretary of Dept. of Health and Human Services,* 964 F.2d 524, 529 (6th Cir.1992). This issue turns on credibility. See *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726-27(6th Cir. Dec. 1, 2004). The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v.*

1:08 CV 1273                                              10

*Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3).

The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036(citing *Auer v. Secretary of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)). It is critical that the ALJ provide reasons which are "sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

The ALJ acknowledged SSR 96-7p in assessing credibility. (Tr. 17). However, the ALJ need not refer specifically to Social Security Rulings. What matters is whether the ALJ conducts the analysis required by the rulings. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 835 (6th Cir. 2006). The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3). See *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under the two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2.

1:08 CV 1273                                             11

The second question then is the reasonableness of the alleged debilitating pain. The regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or other symptoms like fatigue based on:

1.  The claimant's daily activities;

2.  The location, duration, frequency, and intensity of pain;

3.  Precipitating and aggravating factors;

4.  The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5.  Treatment, other than medication claimant has received for relief of pain; and

6.  Any other measures used to relieve pain (e.g. lying down or changing position).

7.  Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii).


The ALJ considered Schmid's complaints of fatigue and tiring easily, inability to function for two days after receiving weekly Interferon injections, flu-like symptoms related to Hepatitis, a problem with sitting where he needed to elevate his legs, and difficulty climbing stairs (Tr. 17-18). Regarding daily activities, the ALJ noted that Schmid watched his 3-year old grandchild, watched TV and read (Tr. 18). These activities do no support the finding that Schmid can perform sustained light work activity. The ALJ also found that the problems associated with vasculitis were controlled with medication. The record does support the finding that lower extremity lesions did clear up when Schmid kept up with his medication regimen. The ALJ, however, rejected Schmid's other complaints stating that Schmid had attended HVAC school for 1½ years for a job requiring heavy

1:08 CV 1273                                                   12

exertion. Essentially the ALJ relied on the conclusion that "It is not credible that the claimant would go to school for 1 ½ years to do a job that he now says he would be completely unable to do at the time."(Tr. 18). The ALJ also again confused the reportedly "heavy work schedule" with heavy work. *Id.*

Aside from the incomplete consideration of the evidence of record according to the Commissioner's mandated regulatory formula, the court is left to question how the ALJ arrived at the conclusion that Schmid's HVAC schooling prepared him for only heavy work. This is not explained in the ALJ's decision. [2] Likewise, the decision does not address the complaints of fatigue in any meaningful fashion. In fact, it is the Commissioner who points out that as early as April 2001, Dr. Harrington noted that Schmid was fatigued from Ribavirin and Interferon therapy. (Tr. 277). Further, it is again the Commissioner who points out that Dr. Sage reported on November 20, 2006, that an EMG showed nerve damage (Tr. 385). Lower extremity neuropathy was not a factor considered by the non-examining state agency physicians on which the ALJ relied, and this compounds the errors made by the ALJ, who found that Schmid could perform light work.

Consequently, as Schmid argues there were opinions from treating physicians supported by long-standing relationship, laboratory testing of Hepatitis C, repeated history and examination findings, and diagnostic testing of lower extremity neuropathy which were considered by the treating physicians, but not considered in the report from the non-examining state agency physicians who reviewed Ex. 1F only, and then only through March 2005 (Tr. 371).

---

[2] While the ALJ does not acknowledge the vocational expert's testimony on this factor, the vocational expert did testify that HVAC skills would transfer only to heavy work (Tr. 577).

1:08 CV 1273                                        13

*Reversal:*

Congress has authorized remand or remand to the Commissioner under the fourth sentence of 42 U.S.C. §405(g). See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under the fourth sentence. *Faucher*, 17 F.3d at 175-76. The Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176; *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). This has occurred in this appeal.

The ALJ's decision is clearly erroneous and proof of disability is strong and evidence to the contrary is lacking since the ALJ relied on an incomplete residual functional capacity assessment which did not factor in lower extremity neuropathy.

The final consideration, as pointed out by Schmid, is whether he would be found disabled under a sedentary work restriction. During part of the time between July 2001 to the time of the decision he was a "person of advanced age" age 55 and above. See 20 C.F.R. §404.1563(e). The vocational expert testified at the administrative hearing that Schmid's skills would transfer only to light work and would not transfer to sedentary work (Tr. 578, 579). Under Table No.1 for sedentary work, a skilled high school graduate of advance age with non-transferable skills, like Schmid, is disabled unless his skills provide for direct entry into skilled work. See Rule 201.06.

1:08 CV 1273                                          14

Thus, Schmid is disabled on the date of his 55th birthday on March 31, 2005. The same decision applies under Table No.1for a skilled high school graduate " closely approaching advanced age" with non-transferable skills following Schmid's 50th birthday on March 31, 2000. See Rule 201. 14.  A different outcome would result for education which provides for direct entry into skilled work See Rules 201.08 and 201.16. However, because the vocational expert testified that Schmid's HVAC training would not transfer to sedentary work, the record supports a  finding that his most recent additional education does not provide for direct entry into skilled sedentary work. See 20 C.F.R. Pt. 404. Subpt. P. App. 2, §201.00(g). Accordingly, the table for sedentary work indicates disability for Schmid for both advanced age or closely approaching advanced age for the period commencing with Schmid's alleged onset of disability on July 1, 2001.

## *CONCLUSION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits is not supported by substantial evidence . The record strongly supports disability and evidence to the contrary is lacking. Accordingly, the decision by the Commissioner is reversed and remanded for the award and calculation of benefits.

                                                                                 s/James S. Gallas
                                                        United States Magistrate Judge

Dated: July 17, 2009